# EXHIBIT A

EXHIBIT A

⚖ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
MURRAY COUNTY, GEORGIA

**22-CI-0144**

**JIM WILBANKS**
**MAR 16, 2022 11:03 AM**

Donna Flood, Clerk
Murray County, Georgia

## IN THE SUPERIOR COURT OF MURRAY COUNTY
## STATE OF GEORGIA

STEPHEN SWINNEY, Individually and : 
in his capacities as Administrator of : 
the estate of Megan Swinney and as : 
next friend of minor child, H.S. : 
                                      : 
        Plaintiff, : 
                                        : 
vs.                                   :     CIVIL ACTION NO._____ 
                                        : 
MYLAN PHARMACEUTICALS, INC.; : 
VIATRIS SPECIALTY, LLC; and : 
VIATRIS, INC.                     : 
                                        : 
           **Defendants.**      : 

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, Stephen Swinney, in his capacities as Administrator of the estate of Megan Swinney and as next friend of minor child, H.S., by and through counsel, and files this Complaint for Damages and in support thereof show the Court the following:

### PARTIES AND JURISDICTION

-1-

Stephen Swinney is the surviving spouse of the late Megan Swinney, and he is domiciled in Murray County, Georgia.  Stephen Swinney is also the duly appointed Administrator of the estate of Megan Swinney, which is an open estate before the Probate Court of Murray County, Georgia.

-2-

H.S. is the sole surviving child of the late Megan Swinney.  H.S. is domiciled in Murray County, Georgia where she resides with her natural father, Stephen Swinney.

EXHIBIT A

-3-

Defendant Mylan Pharmaceuticals, Inc. ("Mylan" hereafter) is a West Virginia corporation, authorized to and conducting business within the state of Georgia. Defendant is subject to the jurisdiction of this Court pursuant to the Georgia long-arm statute, codified O.C.G.A. 9-10-91, by virtue of conducting business within the state of Georgia and having committed one or more torts within the state of Georgia.  Venue is proper in this Court pursuant to O.C.G.A. 14-2-510(B)(4) by virtue of the events giving rise to this cause of action sounding in tort having occurred within Murray County, Georgia.  This defendant may be served via its Georgia registered agent, CT Corporation System, at 289 S. Culver Street, Lawrenceville, GA 30046.

-4-

Defendant Viatris Specialty, LLC is a company formed under the laws of the state of Delaware with its principal office located in Pennsylvania, authorized to and conducting business within the state of Georgia.  Defendant is subject to the jurisdiction of this Court pursuant to the Georgia long-arm statute, codified O.C.G.A. 9-10-91, by virtue of conducting business within the state of Georgia and having committed one or more torts within the state of Georgia.  Venue is proper in this Court pursuant to O.C.G.A. 14-2-510(B)(4) by virtue of the events giving rise to this cause of action sounding in tort having occurred within Murray County, Georgia.  This defendant may be served via its Georgia registered agent, CT Corporation System, at 289 S. Culver Street, Lawrenceville, GA 30046.

EXHIBIT A

-5-

Defendant Viatris, Inc. is a corporation formed under the laws of the state of Delaware with its principal office located in Pennsylvania conducting business within the state of Georgia.  Defendant is subject to the jurisdiction of this Court pursuant to the Georgia long-arm statute, codified O.C.G.A. 9-10-91, by virtue of conducting business within the state of Georgia and having committed one or more torts within the state of Georgia.  Venue is proper in this Court pursuant to O.C.G.A. 14-2-510(B)(4) by virtue of the events giving rise to this cause of action sounding in tort having occurred within Murray County, Georgia.  This defendant may be served via its Pennsylvania registered agent, Brian Roman, at 1000 Mylan Boulevard, Canonsburg, PA, 15317.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

-6-

On or about April 4, 2020 Megan Swinney suddenly lost consciousness at her home where she died in front of her husband and young child, H.S. as her husband attempted CPR until paramedics arrived.

-7-

Upon conducting an autopsy of her body, it was discovered that Megan Swinney's cause of death was acute Pulmonary Thromboembolism in her lungs resulting from Deep Vein Thrombosis ("DVT") or blood clot in layman's terms.

-8-

At the time of her death and the preceding months, Megan Swinney was using the prescription birth control patch, Xulane, which is a norelgestromin and ethinyl estradiol transdermal medication.  Xulane was previously a generic label, and the brand

EXHIBIT A

label was called Ortho Evra.  By the time Megan Swinney was using this medication, the manufacturer of Ortho Evra had ceased the sale of Ortho Evra within the United States and had forfeited its brand label status and accompanying FDA obligations to Defendants as the sole manufacturer and distributor of this medication within the United States.

-9-

Xulane was manufactured and marketed by Defendant Mylan at the time it was proscribed to and used by Ms. Swinney.

-10-

Upon information and belief, Mylan has subsequently merged or otherwise changed its corporate identity to now be known as Viatris, Inc. and/or Viatris Specialty, LLC.  Upon information and belief, resulting from a merger and/or asset purchase agreement, Viatris, Inc. and Viatris Specialty, LLC are jointly and severally liable in the same manner as Mylan for all liability as alleged in this suit.

-11-

Unknown to Ms. Swinney or her physicians but known to Defendants prior to Ms. Swinney's death, Xulane posed an extreme risk of causing DVT among women with a body mass index (BMI) of 30 kg/m$^2$ or more.

-12-

Ms. Swinney's body mass index was greater than 30 kg/m$^2$ at all times during which she was using the Xulane patch, and use of the Xulane patch directly and proximately caused her death.

EXHIBIT A

-13-

The product label for Xulane at all times prior to Megan Swinney's death contained no warning that the product was dangerous for women with a BMI of 30 kg/m$^2$ or more.

## COUNT I – STRICT LIABILITY FOR PRODUCT MANUFACTURERS

-14-

At the time Defendants sold the Xulane patches to Ms. Swinney, the patches were not merchantable and reasonably suited to the use intended, i.e. safely preventing pregnancy in a woman with a body mass equal to or greater than 30 kg/m$^2$.   The packaging was also defective for failing to warn against this known defect as discussed more particularly in Count II herein.

-15-

The unsuitability and defective nature of the Xulane patches directly and proximately caused Ms. Swinney's death, pain and suffering, and emotion anguish for her family.

-16-

Defendants are strictly liable for these damages as well as the medical expenses incurred in relation to attempts to save Ms. Swinney's life pursuant to O.C.G.A. §51-1-11.

## COUNT II – FAILURE TO WARN

-17-

Prior to Ms. Swinney's death, Defendants knew or should have known that Xulane posed a serious risk of DVT and death to women whose body mass is 30 kg/m$^2$ or greater.

EXHIBIT A

-18-

Defendants had a duty to warn Ms. Swinney and others of the known danger pursuant to O.C.G.A. §51-1-11 and pursuant Georgia's common-law negligence obligation to exercise reasonable care.

-19-

Defendants' breach of their duty to warn of the known danger directly and proximately caused Ms. Swinney's death, pain and suffering, and emotion anguish for her family.

-20-

Defendants are strictly liable for these damages as well as the medical expenses incurred in relation to attempts to save Ms. Swinney's life.

**COUNT III – FAILURE TO TIMELY REPORT ADVERSE DRUG EXPERIENCES**

-21-

At all times after Defendants obtained the brand-label status for Xulane, they had a duty to timely report adverse drug experiences to the Food and Drug Administration ("FDA") pursuant to 21 C.F.R. §310.305 and other statutes or regulations.

-22-

Upon information and belief Defendants received notice of adverse drug experiences and failed to timely report them to the FDA.

-23-

The FDA's reporting obligations were designed to protect consumers, and Ms. Swinney was a member of the class intended to be protected.

EXHIBIT A

-24-

The type of harm Ms. Swinney suffered was the type of harm that the reporting obligations were designed to prevent.

-25-

Defendants' failure to timely report adverse drug experiences amounts to negligence per se and directly and proximately caused Ms. Swinney's death, pain and suffering, and emotion anguish for her family.

-26-

Defendants were negligent per se and are liable for these damages as well as the medical expenses incurred in relation to attempts to save Ms. Swinney's life.

## COUNT IV – NEGLIGENT RESEARCH AND TESTING

-27-

The reason the manufacturer of Ortho Evra ceased sale of the product within the United State was because the product was causing an unacceptable rate of bloods clots and death among its users.

-28-

Defendants knew or should have known this to be the case.

-29-

Following the removal of Ortho Evra from the market, Defendants had a duty to exercise reasonable care in conducting further testing and research to determine the circumstance in which Xulane could be safely used for contraceptive purposes.

EXHIBIT A

-30-

Defendants either failed to conduct research and testing at all or they failed to conduct adequate testing and research in breach of their duty.

-31-

Defendants' breach of this duty directly and proximately caused Ms. Swinney's death, pain and suffering, and emotion anguish for her family.

-32-

Defendants are liable for these damages as well as the medical expenses incurred in relation to attempts to save Ms. Swinney's life.

## COUNT V – WRONGFUL DEATH

-33-

Defendants failures as alleged in this Complaint directly and proximately caused the homicide of Megan Swinney.

-34-

Pursuant to O..C.G.A. §51-4-2, Defendants are liable to Plaintiff for the full value of Ms. Swinney's life.

## COUNT VI - PUNITIVE DAMAGES

-35-

Defendant's failures as alleged herein exhibited willful and wanton behavior with a complete disregard and conscious indifference for the safety of others such that an award punitive and exemplary damages are appropriate pursuant to O.C.G.A. §51-12-5.1. Plaintiff is also entitled to an award of attorney's fees and expenses due to the nature of Defendants' conduct.

EXHIBIT A

**WHEREFORE**, Plaintiff prays as follows:

1. That Defendants be served with process and required to answer these allegations within the time permitted by law;

2. That Plaintiff be awarded damages for the full value of the life of Megan Swinney in addition to her medical expenses, her pain and suffering, and the family's mental anguish in an amount to be proven at trial;

3. That Defendant be ordered to pay punitive damages as well as all of Plaintiff's attorney's fees and expenses;

4. That Plaintiff be awarded all pre-judgment and post-judgment interest allowed by law;

5. That Plaintiff be awarded any other relief the court determines equitable and proper; and

6. That a jury of twelve be empaneled to determine all issues of fact in this action, for which demand is hereby made.

Respectfully submitted this 16th day of March, 2022.

**MCCAMY, PHILLIPS, TUGGLE & FORDHAM LLP**

**BY:**   ***/s/ Nathan D. Lock***
**SAMUEL L. SANDERS**
**Georgia Bar No. 140865**
**ssanders@mccamylaw.com**
**NATHAN D. LOCK**
**Georgia Bar No. 948780**
**nlock@mccamylaw.com**
**P. O. Box 1105**
**Dalton, GA 30722-1105**
**P:706-278-4499**
**F:706-529-8814**
**Attorneys for Plaintiff**

EXHIBIT A